UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

GERARD PADULA,

                                        Plaintiff,

        v.                                                      8:11-CV-607
                                                                (TJM/ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

_____

MARK A. SCHNEIDER, ESQ., for Plaintiff
SUSAN REISS, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

**REPORT-RECOMMENDATION**

       This matter was referred to me for report and recommendation by the Honorable

Thomas J. McAvoy, United States District Judge, pursuant to 28 U.S.C. § 636 (b) and

Local Rule 72.3(d).  This case has proceeded in accordance with General Order 18.

## I.      PROCEDURAL HISTORY

       Plaintiff filed an application for supplemental security income (SSI) benefits on

July 7, 2009, claiming disability since July 19, 2006.  (Administrative Transcript (T.)

at 12, 37).  Plaintiff's application was denied on November 13, 2009.  (T. 41).

Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  (T. 7–8).

The hearing, at which plaintiff testified, was conducted on October 26, 2010. (T.

222–61).

       In a decision dated December 3, 2010, the ALJ found that plaintiff was not

disabled, because he had the residual functional capacity (RFC) to perform his past

relevant work.  (T. 19).  The ALJ's decision became the final decision of the

Commissioner when the Appeals Council denied plaintiff's request for review on May

12, 2011.  (T. 1–3).

## II.   ISSUES IN CONTENTION

Plaintiff makes the following claims:

1.   The ALJ failed to properly apply the treating physician rule.  (Pl.'s Mem. at 12–16).

2.   The ALJ failed to properly use the special technique for evaluating mental impairments.  (Pl.'s Mem. at 16–21).

3.   The ALJ failed to properly determine plaintiff's RFC.  (Pl.'s Mem. at 21–23).

4.   The ALJ erred in finding plaintiff was not credible.  (Pl.'s Mem. at 23–26).

Defendant argues that the Commissioner's decision is supported by substantial

evidence and should be affirmed.  For the reasons set forth below, this court agrees

with defendant, and will recommend affirming the Commissioner's determination and

dismissing the complaint.

## III.   APPLICABLE LAW

### A.   Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or

SSI disability benefits must establish that he is "unable to engage in any substantial

gainful activity by reason of any medically determinable physical or mental

2

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner ] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps.

However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step.  *Id.*

### B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision.  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.  In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.

4

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 197 U.S. 229 (1938)); *Williams*, 859 F.2d at 258.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support of the ALJ's decision. *Id. See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## IV.   ALJ's DECISION

The ALJ found that plaintiff had not engaged in substantial gainful activity since the application date of July 7, 2009, and suffered from the following severe impairments: major depressive disorder and polysubstance abuse in remission.  (T. 14).  At Step 3, the ALJ found that plaintiff's mental impairments do not meet or medically equal the criteria of Listings 12.04 or 12.09.  (T. 14).   The ALJ found that plaintiff has mild restriction in activities of daily living.  (T. 14).  The ALJ found that plaintiff has moderate difficulties in social functioning.  (T. 15).  With regard to concentration, persistence, or pace, the ALJ found that plaintiff has mild difficulties, and plaintiff has experienced no extended episodes of decompensation.  (T. 15).  At Step 4, the ALJ found that plaintiff has the RFC to perform a full range of work at all

exertional levels, but has the following nonexertional limitations: difficulty carrying out complex instructions, difficulty making judgments on complex decisions, difficulty responding to changes in a work setting, and difficulty interacting with the public, supervisors, and coworkers.  (T. 15).

The ALJ found that the record showed plaintiff's long history of depression, and problems with alcohol, marijuana, and heroin.  (T. 16).  However, the ALJ noted that plaintiff's treatment has been generally successful in controlling his symptoms.  (T. 19).

The ALJ noted that plaintiff alleged an inability to work due to depression. However, he found that although plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible.  (T. 16).  The ALJ noted that at the hearing, plaintiff described his daily activities, which were not limited to the extent one would expect of someone with plaintiff's alleged symptoms and limitations.  (T. 19).

The ALJ found that while plaintiff could have difficulty with detailed or complex tasks and constant contact with others, the evidence supported the ALJ's conclusion that plaintiff is capable of performing simple, unskilled work that does not involve frequent or constant contact with others, and does not involve complex decision making such as planning, scheduling, report writing, or supervising.  (T. 19).

In assessing plaintiff's RFC, the ALJ accorded great weight to the opinions of Dr. Jean Berggren, a treating psychiatrist, and treating physician Dr. John Miller. (T. 17). The ALJ accorded the opinion of treating psychiatrist Dr. Joanne Astill-Vaccaro controlling weight. (T. 18).[1]

The ALJ noted that plaintiff stopped working to attend college, but held summer jobs as a laborer for a landscaping/lawn care business. (T. 19-20). Because this type of work requires very infrequent contact with the public, co-workers, and/or supervisors and plaintiff performed this work long enough to learn the job, the ALJ held that plaintiff could perform his past work as a laborer for a landscaping/lawn care business. (T. 20; *see also* T. 113).

## VII.  DISCUSSION

### A.    Treating Physician

#### 1.    Applicable Law

While a treating physician's opinion is not binding on the Commissioner, the opinion must be given controlling weight when it is well supported by medical findings and *not inconsistent with other substantial evidence. See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. § 416.927(d). If the treating physician's opinion is contradicted by other substantial evidence, the ALJ is *not* required to give the opinion controlling weight. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

---

[1] The opinions of these doctors, which the ALJ discussed at length, are summarized below.

The ALJ must, however, properly analyze the reasons that the report is rejected. *Id.* An ALJ may not arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). The ALJ is entitled to reject conclusions of disability made by other sources because it is the province of the Commissioner to make the determination of whether an individual is "totally disabled." 20 C.F.R. §§ 404.1527(e), 416.27(e); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)). This is true even if the individual stating his or her opinion of "total disability" is a medical doctor. *Id.*; *see also Michels v. Astrue*, 297 F. App'x 74, 76 (2d Cir. 2008).

### 2.    Application

Plaintiff argues that the ALJ violated the treating physician rule by rejecting the "well-founded opinions" of Dr. Astill-Vaccaro. (Pl.'s Br. 13). The ALJ accepted Dr. Astill-Vaccaro's opinion that plaintiff would have difficulties with complex instructions, making judgments on complex work-related decisions and only moderate limitations with interacting with the public, supervisors or co-workers and responding to changes in a work setting. (T. 19). These limitations are the same as found in Dr. Astill-Vaccaro's May 2010 statement, as amended in February 2011. (*See* T. 348, 374).

Dr. Astill-Vaccaro stated that plaintiff would have marked difficulties carrying out complex instructions and making judgments on complex work-related decisions,

8

and moderate to marked difficulty interacting with supervisors.  (T. 347–48).  The form filled out by Dr. Astill-Vaccaro defined "moderate" as "more than a slight limitation in this area but the individual is still able to function satisfactorily," and "marked" as "serious limitation in this area . . . substantial loss in the ability to effectively function."  (T. 347).  The ALJ specifically held that plaintiff could do "no complex decision making including planning, scheduling, report writing, or supervising."  (T. 19).

Dr. Astill-Vaccaro updated her May 2010 assessment in February 2011, and indicated that plaintiff would have a moderate impairment to understanding and remembering complex instructions and a mild to moderate impairment to understanding and remembering simple instructions.  (T. 374).  The ALJ incorporated these assessments when he held that plaintiff was limited to simple, unskilled work tasks that did not involve frequent or constant contact with others and involved only simple decision-making.  (T. 15, 19).

Plaintiff points out that between 2007 and 2010, Dr. Astill-Vaccaro noted plaintiff's "ups and downs," but plaintiff cites to no specific records.  (Pl.'s Br. 13).  An examination of the record reveals that Dr. Astill-Vaccaro noted plaintiff's difficulties, but the record also reveals that treatment was generally successful.  (T. 296–326, 353–58, 361–66).  After a brief relapse in January 2007, plaintiff was in detox for five days, and participated in a 4-week rehabilitation program.  (T. 320–21).

Upon exiting the rehabilitation program in May 2007, Dr. Astill-Vaccaro reported that plaintiff appeared to be doing "relatively well and very early sobriety." (T. 320). One month later, she stated that plaintiff's medications were working well, plaintiff denied side effects, and he felt he was "very stable." (T. 319). In June 2007, plaintiff again denied side effects and Dr. Astill-Vaccaro stated that plaintiff was doing "relatively well overall." (T. 318). Plaintiff asked about sweating related to his Suboxone[2] prescription in August 2007, but denied side effects at subsequent visits in July, September, and November 2007. (T. 314–16). Dr. Astill-Vaccaro repeatedly stated from July through December 2007, that plaintiff was doing "well" or "relatively well," and things were "stable" or "relatively stable." (T. 312–16).

Throughout 2008, Dr. Astill-Vaccaro repeatedly stated that plaintiff denied side effects, was doing well, and was relatively stable. (T. 304–311). Plaintiff complained of fatigue in March 2008, and later some anxiety in September 2008, but both complaints were resolved by the next appointment with Dr. Astill-Vaccaro. *Id.*

Plaintiff started tapering off the Suboxone in early 2009, and stated in April that he was experiencing some psychological and perhaps physical withdrawal symptoms, but Dr. Astill-Vaccaro stated that plaintiff's speech was fluent, his thought process was linear, he had no particular side effects to his other medications, and that he was

---

[2] Suboxone is often prescribed to treat opioid dependence by helping prevent withdrawal symptoms. *Buprenorphine Sublingual*, U.S. National Library of Medicine, Medline Plus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a605002.html.

"doing well overall." (T. 302). When plaintiff's Suboxone dosage was decreased again in May 2009, Dr. Astill-Vaccaro opined that plaintiff was "doing relatively well but is now starting to have some symptoms with the decrease in Suboxone doses." (T. 301). However, plaintiff appears to have adjusted, because by June 2009, he reported that he was doing much better, and Dr. Astill-Vaccaro noted that plaintiff was tolerating his medications with no acute side effects. (T. 299). Plaintiff successfully continued his taper of Suboxone through September 2009. (*See* T. 296–98). Plaintiff met with Dr. Astill-Vaccaro again in January 2010, and he stated that his anxiety increased "exponentially" when he tried to stop taking Suboxone altogether, so he continued taking a small dose, and Dr. Astill-Vaccaro noted that plaintiff had no pervasive depression, he remained sober and clean from substance abuse, and was doing "better," despite the anxiety resulting from decreases in his Suboxone prescription. (T. 356).

In February, plaintiff stated that he had done "fairly well," and Dr. Astill-Vaccaro noted that plaintiff remained substance-free and concluded that he was doing relatively well overall. (T. 355). Dr. Astill-Vaccaro stated in May 2010 that plaintiff was doing better overall with his depression, but that anxiety was "still moderately an issue." (T. 365). Dr. Astill-Vaccaro stated in June 2010 that plaintiff remained substance-free, had not had any relapses, and that his anxiety was moderate and overall he was doing better. (T. 364). Plaintiff continued to do better in August, and

11

reported in September 2010 that he felt like a "new person," and Dr. Astill-Vaccaro stated that his anxiety was lower.  (T. 361–62).

After examining the longitudinal record, it is clear that plaintiff's depression and substance abuse contribute to his limitations, but the effects of those limitations were assessed by Dr. Astill-Vaccaro on two occasions, and the ALJ properly gave them controlling weight.  (*See* T. 347, 374).  Thus the ALJ properly applied the treating physician rule in making his determination.

### B.    Evaluating Mental Impairments

Plaintiff argues that the ALJ did not properly complete the "special technique" for evaluating mental impairments, and that his condition meets or medically equals the criteria of Listing 12.04.  (Pl.'s Br. 20–21).

### 1.    Applicable Law

The regulations "require application of a special technique at the second and third steps of the five-step framework."  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted).  The reviewing authority first determines if the claimant has a "medically determinable mental impairment."  *Id.* at 266 (quoting 20 C.F.R. § 404.1520a(b)(1)).  The reviewer then considers degree of functional limitation resulting from any medically determinable impairments as they pertain to four broad functional areas.  *Id.* at 266 (quoting 20 C.F.R. § 404.1520a(b)(2)).  These functional areas are: activities of daily living, social functioning, concentration, persistence or

pace, and episodes of decompensation.  *Id.*  (citing 20 C.F.R. § 1520a(c)(3)).

The first three of these functional areas (activities of daily living, social functioning, and concentration, persistence or pace) are evaluated, and the limitations caused by the medically determinable impairments are classified as none, mild, moderate, marked, or extreme.  20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4).  The fourth functional area (episodes of decompensation), is evaluated by indicating the number of such episodes: none, one or two, three, or four or more.  *Id.*  If the claimant's mental impairment is severe, then the reviewing authority must compare the relevant medical findings and plaintiff's limitations to the criteria of mental disorders listed in the regulations (the listings) to determine whether plaintiff's impairment matches any listed disorder.  *Petrie v. Astrue*, 412 F. App'x 401, 408 (2d Cir. 2011).  If the impairment is not of "listing" severity, then the reviewer determines the claimant's residual functional capacity.  *Id.*

### 2.    Analysis

The ALJ found that plaintiff's impairments did not meet or medically equal the criteria of Listings 12.04,[3] because after examining the evidence, the ALJ concluded

---

[3] In order to meet the criteria of Listing 12.04 (depressive syndrome), plaintiff would need to have at least four of the following: anhedonia or pervasive loss of interest in almost all activities; appetite disturbance with change in weight; sleep disturbance; psychomotor agitation or retardation; decreased energy; feelings of guilt or worthlessness; difficulty concentrating or thinking; thoughts of suicide; hallucinations, delusion or paranoid thinking; *and* two of the following: marked restriction or difficulties in activities of daily living; social functioning; concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration; *or* a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by

13

that plaintiff had only mild restrictions on activities of daily living; moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation that had been of extended duration.  (T. 14–15).  As to activities of daily living, the ALJ noted that plaintiff stated that he needed to be reminded to brush his teeth at times, but was able to take care of his own personal needs, do his own laundry, do household chores, wash dishes, vacuum, and do his own grocery shopping.  (T. 15; *see also* T. 32, 121–24).  In social functioning, the ALJ noted that plaintiff gets nervous and anxious when around people he does not know.  (T. 15; *see also* T. 34).  As to concentration, persistence, or pace, the ALJ noted that plaintiff attended college classes, watched movies, played guitar, and played video games.  (T. 15; *see also* T. 28, 32).  The ALJ also noted that the record did not show that plaintiff had experienced any extended periods of decompensation that meet the criteria of the regulations.[4]  (T. 15).

   Where the Commissioner's decision "rests on adequate findings supported by

---

medication or psychosocial support, *and* one of the following: repeated episodes of decompensation, a residual disease process that with a minimal increase in mental demands or a change in the environment would likely cause the claimant to decompensate, or a current history of one or more years' inability to function outside a highly supportive living arrangement.  20 C.F.R. pt. 404 subpt. P, app. 1 § 12.04 (A), (B), (C).

   [4] Repeated episodes of decompensation, each of extended duration means three episodes within one year, or an average of once every four months, each lasting for at least two weeks.  20 C.F.R. pt. 404 subpt. P, app. 1 § 12.00(C)(4).  Plaintiff was hospitalized at Champlain Valley Physicians Hospital Medical Center in January 2004 for six days and in March 2006 for nine days.  (T. 149, 154).  Both visits are prior to plaintiff's alleged date of onset of disability of July 19, 2006.

evidence having rational probative force, we will not substitute our judgment for that of the Commissioner." *Galiotti v. Astrue*, 266 F. App'x 66, 67 (2d Cir. 2008) (citing *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983). The ALJ appropriately considered plaintiff's limitations in the four broad functional areas, and found that plaintiff did not suffer from marked restriction in two of the first three functional areas. Thus, plaintiff did not satisfy the "paragraph B" criteria, and consideration of the "paragraph A" criteria is not necessary, as they must both be met to satisfy Listing 12.04. 20 C.F.R. pt. 404 subpt. P, app. 1 § 12.04(A), (B).

As to the "paragraph C" criteria, Dr. Astill-Vaccaro stated, in February 2011, that plaintiff had mild to moderate limitations to his ability to understand, remember, and carry out simple instructions and make judgments on simple work-related decisions, and a moderate limitation means plaintiff could still function at least satisfactorily. (T. 374, *see also* T. 347). Dr. Astill-Vaccaro stated that plaintiff also had moderate limitations to interacting appropriately with the public and coworkers and dealing with changes in a routine work setting, which also indicates that plaintiff could still function satisfactorily. (T. 347–48). Progress notes from Dr. Astill-Vaccaro show that plaintiff was attending college classes successfully, he testified that he was only 18 credits from graduating from college, he testified that he drove frequently, and as discussed above, he performed most activities of daily living, all which support the conclusion that even a minimal increase in mental demands or a

change in environment would *not* be predicted to cause plaintiff to decompensate. (*See* T. 27, 31–32, 303, 307, 309, 310, 311, 312, 313, 314).  Plaintiff testified in 2010 that he lived in an apartment with his girlfriend, and he previously reported in 2009 that he lived alone in subsidized housing, which shows that plaintiff can function outside a highly supportive living arrangement.  (*See* T. 26, 120).  Plaintiff fails to satisfy "paragraph C," and thus does not meet the criteria of Listing 12.04.  Thus, the ALJ's application of the Mental Review Technique is supported by substantial evidence.

### C.    Residual Functional Capacity (RFC) and Credibility

#### 1.    Applicable Law

In rendering a residual functional capacity (RFC) determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R §§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)).  An ALJ must specify the functions plaintiff is capable of performing, and *may not simply make conclusory statements regarding a plaintiff's capacities*.  *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)).  RFC can only be established when there is

substantial evidence of each physical requirement listed in the regulations.  *Id.*  The

RFC assessment must also include a narrative discussion, describing how the evidence

supports the ALJ's conclusions, citing specific medical facts, and non-medical

evidence.  *Trail v. Astrue*, 5:09-CV-1120, 2010 WL 3825629 at *6 (N.D.N.Y. Aug.

17, 2010) (citing Social Security Ruling (SSR) 96-8p, 1996 SSR LEXIS 5, 1996 WL

374184, at *7).

      "An [ALJ] may properly reject [subjective complaints] after weighing the

objective medical evidence in the record, the claimant's demeanor, and other indicia of

credibility, but must set forth his or her reasons 'with sufficient specificity to enable us

to decide whether the determination is supported by substantial evidence.'"  *Lewis v.*

*Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96

CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. March 25, 1999)).  To satisfy the

substantial evidence rule, the ALJ's credibility assessment must be based on a two step

analysis of pertinent evidence in the record.  *See* 20 C.F.R. § 404.1529; *see also*

*Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. March 3,

1998).

      First, the ALJ must determine, based upon the claimant's objective medical

evidence, whether the medical impairments "could reasonably be expected to produce

the pain or other symptoms alleged. . . ."  20 C.F.R. § 404.1529(a).  Second, if the

medical evidence alone establishes the existence of such impairments, then the ALJ

need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work. *Id.* § 404.1529(c).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. *Id.* § 404.1529(c)(3).

### 2.    Analysis

In this case, the ALJ found that plaintiff has the residual functional capacity to perform a full range of work at all exertional levels, but with certain nonexertional limitations: difficulty carrying out complex instructions, difficulty making judgments on complex decisions, difficulty responding to changes in a work setting, and difficulty interacting with the public, supervisors, and coworkers.  (T. 15)  The ALJ noted that plaintiff claimed his depression prevented him from working, and that he

received eight to ten hours of sleep on average, went to the movies twice a week, was only able to maintain attention for 30 minutes at a time, and had difficulties getting along with people in authority. (T. 16; *see also* T. 121, 124, 126). The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible. Finding plaintiff not credible does not mean he has no symptoms, but rather that his statements as to the intensity, frequency, and limiting nature of his impairments are not sufficient to substantiate plaintiff's claim of disability under the Social Security Act.

Dr. Jean Berggren treated plaintiff in 2006, after he was hospitalized for six days following a drinking binge when he threatened suicide. (T. 146). In March 2006, two months after plaintiff was discharged, Dr. Berggren noted that plaintiff was alert and cooperative, that his depression had been well-controlled since his hospitalization, and that plaintiff had "good insight into his illness and when sober has good impulse control." (T. 151–52).

Treating physician Dr. John Miller stated in December 2006 that plaintiff was doing well on his anxiety therapy, had good judgment and insight, and had full affect. (T. 276). Dr. Miller noted in June 2007 that plaintiff was tolerating his anxiety medication without adverse side effects, had good judgment and insight, normal mood, and full affect. (T. 274). Dr. Miller stated in January 2008 that plaintiff continued to

tolerate his anxiety medication without adverse side effects, had good judgment and insight, his memory was normal, his mood was good, and his affect was full.  (T. 267).  Dr. Miller reported in July 2008 that plaintiff was still tolerating his anxiety medication without adverse side effects, had good judgment and insight, had normal memory, his mood was good, and full affect.  (T. 262).  In February 2009, Dr. Miller stated that plaintiff was stable on his current therapy, he had no adverse side effects from his anxiety medication, and he continued to have good judgment and insight.  (T. 255).

As described above, Dr. Astill-Vaccaro saw plaintiff regularly through 2010, and provided a medical source statement as to plaintiff's limitations, which has been discussed above.  The ALJ accorded Dr. Astill-Vaccaro's opinion controlling weight and Dr. Miller's opinion and Dr. Berggren's opinion both great weight.  The record clearly supports the ALJ's conclusion that plaintiff could perform a full range of work.  In addition, the ALJ incorporated the nonexertional limitations specified in Dr. Astill-Vaccaro's medical statement, which indicated that plaintiff would have difficulty with complex tasks, complex decision making, and frequent contact with others.  (*See* T. 19, 347, 374).[5]

---

[5] Non-examining state agency psychologist, H. Ferrin, reviewed plaintiff's record and completed a Psychiatric Review Technique on November 10, 2010.  (T. 328).  The ALJ noted that Dr. Ferrin found that plaintiff would have mild restrictions to his activities of daily living, mild restrictions to his ability to maintain concentration, persistence, and pace, no limitations to maintaining social functioning, and no episodes of decompensation.  (T. 18–19; see also T. 338).  The ALJ accorded some weight to non-examining physician, Dr. Ferrin's opinion, because it was consistent with the other evidence in the record.  (T. 19).

As to plaintiff's credibility, despite his alleged limitations, he testified that he washed dishes, vacuumed, did laundry, went shopping, took care of his own personal needs, helped his girlfriend with her children, and enjoyed playing video games, playing guitar, and going fishing.  (*See* T. 27, 32).  As the ALJ pointed out, and as seen from the above discussion of the record, plaintiff's treatment has generally been successful in controlling his symptoms, he often reported no side effects from his medication, and he was repeatedly observed to be doing well, despite his alleged ongoing and disabling symptoms.  (T. 19).  After a review of the evidence, it is clear that the ALJ's determination of plaintiff's RFC was supported by substantial evidence, and the ALJ correctly found that plaintiff was not fully credible as to his alleged disabling symptoms.

### C.    Past Relevant Work

### 1.    Applicable Law

At Step 4 of the Commissioner's analysis, a claimant's past relevant work must be assessed.  20 C.F.R. § 404.1520(a)(4)(iv).  Past relevant work is work that a claimant has performed in the past 15 years and constituted substantial gainful activity.  20 C.F.R. § 404.1565(a), (b).  If the claimant can still do past relevant work, the Commissioner will find the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  Where substantial evidence supports the ALJ's conclusions as to whether plaintiff's RFC allows plaintiff to perform his past relevant work, it is unnecessary to

remand the case for further development of the record.  *See Stenoski v. Comm'r of Social Security*, 7:07-CV-552, 2010 U.S. Dist. LEXIS 24030, at *16–17, 2010 WL 985367 (N.D.N.Y. March 16, 2010).

### 2.   Analysis

The ALJ found that plaintiff could return to his past relevant work as a laborer in the landscaping business.  Plaintiff worked as a landscaper during the summer in 2001, 2002, and 2003.  (T. 113).  Plaintiff earned $5,601.65 and $5,514.32 during the summer of 2002 and 2003, respectively.  (T. 28–29, 86, 113).  When prorated over a quarter to reflect plaintiff's summer employment, the monthly earnings of $1,867.16 for 2002 and $1,838.00 for 2003 are significantly above the threshold of $780.00 per month for 2002 and $800.00 per month for 2003 that creates a presumption of substantial gainful activity.  (*See* http://policy.ssa.gov/poms.nsf/lnx/0410501015).

Plaintiff argues, without citing a source, that the ALJ "erroneously" held that plaintiff's summer work was substantial gainful employment because the ALJ "apportioned the money earned over a three-month period."[6]  (Pl.'s Br. 17).  Plaintiff appears to be arguing that his earnings for 2002 and 2003 should be averaged over the twelve calendar months, not over the three months when he actually worked. Plaintiff's argument is without merit.  The regulations state that when there has been "no change in the substantial gainful activity earnings levels," the SSA will "average

---

[6] Plaintiff does not argue that he lacks the mental capacity to perform his past relevant work.

[an applicant's] earnings over the entire period of work requiring evaluation." 20 C.F.R. § 404.1574a(a).  However, "if there is a significant change in [an applicant's] work pattern or earnings during the period of work requiring evaluation, [the SSA] will average your earnings over each separate period of work to determine if any of your work efforts were substantial gainful activity." 20 C.F.R. § 404.1574a(c).

The ALJ properly averaged plaintiff's earnings over the quarter in which he worked his summer job.  (*See* T. 19; *see also Shepard v. Astrue*, No. 5:10-CV-323, 2011 WL 5419852, at *4–5 (D. Vt. October 12, 2011) (*report and recommendation adopted*).  The ALJ also noted that plaintiff reported he performed this work for three summers, which is enough time to learn the job.  (T. 20).  It is also important to note that plaintiff quit working at the end of the summer to accommodate his school schedule, not due to his alleged disabling symptoms preventing him from continuing to work for the rest of the year.  (*See* T. 28).  The ALJ correctly considered plaintiff's work as a laborer for a landscaping company as past relevant work.

As discussed above, substantial evidence supports the ALJ's determination that plaintiff had the residual functional capacity to perform a full range of work, and therefore plaintiff could perform his past relevant work as a laborer in the landscaping business.  The ALJ's decision that plaintiff was not disabled under the Social Security regulations should be affirmed.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the decision of the Commissioner be **AFFIRMED** and plaintiff's complaint be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file the written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15) (2d Cirl 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: April 12, 2012

**Hon. Andrew T. Baxter**
**U.S.  Magistrate Judge**

24